**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PATRICK R. COOPER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case no. 4:13cv01610 PLC** |
| | ) | |
| **TROY STEELE and JOSH HAWLEY,**[1] | ) | |
| | ) | |
| **Respondents.** | ) | |

## MEMORANDUM AND ORDER

Petitioner Patrick R. Cooper seeks federal habeas relief from a Missouri state court judgment entered after a jury trial. <u>See</u> 28 U.S.C. § 2254. For the reasons set forth below, the Court denies the petition.[2]

## I. Background

The State of Missouri charged Petitioner with committing: statutory rape in the first degree, in violation of Mo. Rev. Stat. § 566.032, between April 17, 2007 and April 16, 2008 (Count I); statutory sodomy in the first degree, in violation of Mo. Rev. Stat. § 566.062, between April 17, 2007 and October 15, 2008 (Counts II through V); and incest, in violation of Mo. Rev.

---

[1] Petitioner is incarcerated at the Eastern Reception Diagnostic and Correctional Center ("ERDCC") where Troy Steele is now the warden. The Court will, therefore, substitute Troy Steele for Terry Russell, the ERDCC warden originally named as a Respondent. <u>See</u> Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts (for a petitioner "currently in custody under a state court judgment," the named respondent is "the state officer who has custody").

The Court also substitutes Josh Hawley, the current Attorney General of the State of Missouri, for Chris Koster, the prior Missouri Attorney General, as a Respondent because Petitioner is subject to consecutive sentences imposed by the trial court for the conviction he is challenging in this federal habeas proceeding. <u>See</u> Rule 2(b) of the Rules Governing Section 2254 Cases in the United States District Courts (if the challenged state court judgment may subject the petitioner to future custody, the named respondents must be "both the officer who has current custody and the attorney general of the state where the judgment was entered").

[2] The parties consent to the exercise of jurisdiction by a United States Magistrate Judge under 28 U.S.C. § 636(c).

Stat. § 568.020, between April 17, 2007 and October 15, 2008 (Count VI).[3] Each of the six charged offenses occurred at the same location in St. Louis County, Missouri and involved one minor female ("Victim").[4] With respect to the first-degree statutory rape (Count I), the State charged Petitioner "knowingly had sexual intercourse with [Victim], a child less than twelve years old."[5] With regard to the four counts of first-degree statutory sodomy, the State charged that, "for the purpose of arousing or gratifying the sexual desire of [Petitioner] he had deviate sexual intercourse with [Victim], who was then a child less than fourteen years old," by placing: "his penis in [Victim]'s anus" (Count II), "his mouth on [Victim]'s genitals" (Count III), "his hand on [Victim]'s genitals (Count IV), and "[Victim]'s hand on his genitals" (Count V).[6] For the incest offense, the State charged Petitioner "engaged in deviate sexual intercourse with [Victim] whom [Petitioner] knew to be his descendant by blood" (Count VI).[7]

Trial Court Proceeding

Prior to trial, Petitioner filed a request for discovery seeking numerous items, including "the statements of all persons who have been interviewed by an agent of the State in connection with the subject matter of this cause and whom the State does not presently intend to call at trial together with their names and last known addresses"; notes, memoranda, or summaries "of any oral statements made to an agent of the State by any person in connection with the subject matter of this cause"; and "[t]he names and addresses of all persons who may have some knowledge of

---

[3] Information in lieu of indictment, filed Dec. 14, 2009, Legal File, Resp'ts Ex. 5, at 25-27.

[4] Information in lieu of indictment, filed Dec. 14, 2009, Legal File, Resp'ts Ex. 5, at 25-27.

[5] Information in lieu of indictment, filed Dec. 14, 2009, Legal File, Resp'ts Ex. 5, at 25.

[6] Information in lieu of indictment, filed Dec. 14, 2009, Legal File, Resp'ts Ex. 5, at 25-26.

[7] Information in lieu of indictment, filed Dec. 14, 2009, Legal File, Resp'ts Ex. 5, at 26.

the facts of the present case."[8]  Petitioner subsequently filed a supplemental motion for discovery and order for records seeking an order directing the "Children's Division to release any and all records, reports, 'hotline' calls, reports and evaluations done by the Family Court of St. Louis County and any reports, evaluations done by any residential placement with regard to" Victim, her two younger siblings, and two other individuals.[9]  The trial court granted Petitioner's supplemental motion with regard to Victim's records and other materials, and denied it in other respects, except to the extent the requested materials included information the State was otherwise under a duty to disclose.[10]

The State filed a notification of intent to use child's statements under Section 491.075 RSMo.[11]  The trial court held a two-day hearing on the State's notification ("491 hearing").[12]  At the conclusion of the 491 hearing's first day, Petitioner's trial attorney entered her appearance and the trial court granted Petitioner's former attorney leave to withdraw.[13]  In addition to cross-examining the witnesses during the second day of that hearing, Petitioner's trial attorney reported that, with the concurrence of Petitioner, Petitioner was not filing a motion to suppress the statement he made to the police.[14]

---

[8] Pet'r Request for Discovery, filed Dec. 10, 2008, Legal File, Resp'ts Ex. 5, at 11-15.

[9] Pet'r Supplemental Mot. Discovery and Order for Records, filed Feb. 5, 2009, Legal File, Resp'ts Ex. 5, at 16-17.

[10] Order, filed Feb. 25, 2009, Legal File, Resp'ts Ex. 5 at 18.

[11] State's Notification of Intent to Use Child's Statements Under Section 491.075 RSMo, filed Aug. 26, 2009, Legal File, Resp'ts Ex. 5, at 19-20; Prosecution's Am. Notification of Intent to Use Child's Statements under Section 491.075 RSMo, filed Sept. 24, 2009, Legal File, Resp'ts Ex. 5, at 21-23.

[12] Trial Tr., Vol. II, "491 hearing" on Aug. 28, 2009 and Oct. 9, 2009, Resp'ts Ex. 9, at 5-74.

[13] Trial Tr., Vol. II, Resp'ts Ex. 9, at 5 and 34.

[14] Trial Tr., Vol. II, "491 hearing" on Oct. 9, 2009, Resp'ts Ex. 9, at 35-77.

On the first day of the five-day jury trial, the trial court conferred with counsel to discuss the State's motion in limine and the parties engaged in *voir dire* examination of potential jurors.[15]  During trial, the State introduced a number of exhibits, including drawings by Victim, several of Victim's medical records, Petitioner's written statement to the police, and a recording of Victim's interview at the Children's Advocacy Center ("CAC"), which was played for the jury.[16]  The State also presented the testimony of Victim[17] and four adults with whom Victim discussed Petitioner's conduct.  Karen McElroy, a teacher at Victim's school, was the person to whom Victim first reported Petitioner's conduct on October 21, 2008.[18]  Dr. Inna Treskov, a pediatrician at Cardinal Glennon Children's Hospital's emergency room, examined Victim soon after she reported Petitioner's conduct.[19]  Megan Fitzgerald Marietta, a forensic interviewer employed by Children's Advocacy Services of Greater St. Louis interviewed Victim and two of her siblings, a younger brother and sister, at the CAC on October 27, 2008.[20]  Detective Angela Bruno, a detective with the St. Louis County Police Department,[21] engaged in what is referred to as a "cursory interview" of Victim and her younger siblings at their home in October 2008, and later arrested Petitioner.[22]

---

[15]  Trial Tr., Vol. I, Resp'ts Ex. 9, at 14-288.

[16]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 220, 223, 234, 262, 268, 296, 339, and 349.

[17]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 105-94.

[18]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 195-215.

[19]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 216-54.

[20]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 255-68 and 290-318.

[21]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 318-92.

[22]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 318-92.

Victim testified Petitioner "tried to have sex with [her] . . . [i]n the bathroom, the bedroom, and sometimes [on the couch] in the living room" of their home.[23]    She stated Petitioner took naps on the end of his bed with Victim on one side of him and Victim's younger siblings on the other side of him.[24]  She described his conduct on the bed as putting his "private spot" in hers, then "[t]he bed would [shake]," "[i]t hurt" her, his breathing "would get heavy," and then "[t]here would be like . . . spots" on the sheets that he "would try to wipe . . . up."[25] She testified it happened many times when she was eleven or twelve years old.[26]  Victim also stated "[m]ore than once" Petitioner put his finger in her front private spot, and he would put "[h]is private spot" in her "back private spot" on her "butt" where "poop" comes out, and Petitioner took her hand and put it on his "private part."[27]  Sometimes while on the bed, Victim described, Petitioner would unzip his pants, pull Victim's panties down to her knees, and put his penis in Victim's "butt" or vagina.[28]    Additionally, Victim stated, Petitioner would "put his tongue to [and lick her] private spot" after he placed her on the sink in the bathroom; and he would "grab" her hand and touch "his private spot."[29]  Victim testified this conduct occurred when she was eleven years old.[30]

---

[23]  Trial Tr., Vol. II, Resp't's Ex. 9, at 108-09.

[24]  Trial Tr., Vol. II, Resp't's Ex. 9, at 109.

[25]  Trial Tr., Vol. II, Resp't's Ex. 9, at 109-12, 168.

[26]  Trial Tr., Vol. II, Resp't's Ex. 9, at 111, 117.

[27]  Trial Tr., Vol. II, Resp't's Ex. 9, at 113-14, 179-80.

[28]  Trial Tr., Vol. II, Resp't's Ex. 9, at 132-34.

[29]  Trial Tr., Vol. II, Resp't's Ex. 9, at 114-15, 181-83.

[30]  Trial Tr., Vol. II, Resp't's Ex. 9, at 115-17.

Detective Bruno testified that, during her post-arrest interview of Petitioner, he at first denied "anything happen[ed]," and then admitted that, when his wife was at work, he took "naps" with Victim and her two younger siblings on his bed, with him lying next to Victim and Victim's siblings lying on the other side of Petitioner.[31]   Detective Bruno asked Petitioner whether, during these "naps," he "performed oral sex" on Victim, "placed [Victim]'s hand on his penis," and "touched [Victim]'s vagina with his hands . . . placing his finger in [Victim's] vagina."[32]   Petitioner responded affirmatively to those questions, and responded negatively to Detective Bruno's question whether he had sexual intercourse with Victim.[33]   After further discussion of his <u>Miranda</u> rights, Petitioner wrote a statement that did not include the information he provided when Detective Bruno questioned him.[34]

At the conclusion of the State's case, Petitioner filed a motion for judgment of acquittal at the close of the State's evidence.  The trial court denied Petitioner's motion.[35]

In the defense case, Petitioner presented five other witnesses[36] and testified himself.[37] Clarence Leroy Henke ("Roy Henke"), Petitioner's brother, and his wife, Rhonda Henke, stated

---

[31]   Trial Tr., Vol. II, Resp'ts Ex. 9, at 344-45.

[32]   Trial Tr., Vol. II, Resp'ts Ex. 9, at 344-48.

[33]   Trial Tr., Vol. II, Resp'ts Ex. 9, at 344-48.

[34]   Trial Tr., Vol. II, Resp'ts Ex. 9, at 349-51, 352-54.  Detective Bruno read Petitioner's written statement to the jury.  <u>Id.</u> at 353.  In his written statement, Petitioner stated:

> was taking a nap, had [Victim and her sister] in the bed so I would know what they were doing.  I was rubbing [Victim's sister]'s back and [Victim]'s stomach and was almost asleep, started to rub [Victim], top of her vagina, not seeing what I did.  I stopped and told both girls to get up.

<u>Id.</u> at 353.

[35]   Trial Tr., Vol. II, Resp'ts Ex. 9, at 393.

[36]   Trial Tr., Vol. II, Resp'ts Ex. 9, at 418-545.

they took care of Victim and her two younger siblings at their home on numerous occasions, both while Petitioner and his wife worked and then, after Petitioner's arrest, as foster parents, except that Victim was placed with a different foster parent after a few months.[38] Gena Morice, whose husband is the brother of Petitioner's wife, and who has a son named Robert Engle or "Bobby," testified that, prior to the incidents involving Petitioner, Victim had accused Bobby of inappropriately touching her and then, when talking about the accusation with Ms. Morice, told Ms. Morice that she "was lying [or "didn't tell the truth"] about the whole incident," and the accusation was not further investigated.[39] Stacy Cooper, Petitioner's wife and Victim's step-mother, testified in relevant part that (1) she was asked not to speak with Victim or her siblings after Victim reported the incidents involving Petitioner and (2) she did not answer or respond to telephone calls Victim made to Ms. Cooper's home leaving messages that she was "sorry."[40] Lionel Morice, Stacy Cooper's father and Petitioner's father-in-law, testified Stacy Cooper had lived with him since Victim's report of the incidents and Mr. Morice had suggested to her that she turn Petitioner's children "over to social services, Children's Services."[41]

At the close of all the evidence, Petitioner filed a motion for judgment of acquittal at the close of all the evidence. The trial court denied Petitioner's motion.[42]

---

[37]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 546-658.

[38]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 418-46.

[39]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 446-64, 446-54, 458, 460.

[40]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 477-538 and 516.

[41]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 688-91.

[42]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 692.

In its instructions, the trial court directed the jury to base its decision "only on the evidence presented to [the jury] in the proceedings in th[e] courtroom.[43]  Additionally, the trial court instructed the jury:

> [t]he charge of any offense is not evidence, and it creates no inference that any offense was committed or that the defendant is guilty of an offense.
>
> The defendant is presumed to be innocent, unless and until, during your deliberations upon your verdict, you find him guilty.  This presumption of innocence places upon the state the burden of proving beyond a reasonable doubt that the defendant is guilty.[44]

(Footnore added.)

With regard to the offenses, the trial court defined "deviate sexual intercourse" as:

> any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person.[45]

(Footnote added.)  With regard to the incest offense in Count VI, the trial court instructed the jury:

> if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that between April 17th, 2007 and October 15th, 2008, in the County of St. Louis, State of Missouri, [Petitioner] engaged in deviate sexual intercourse by placing his penis in [Victim]'s anus or by placing his mouth on [Victim]'s genitals or by placing [Victim]'s hand on his genitals, and
>
> Second, that [Victim] was a descendant of [Petitioner] by blood, and
>
> Third, that [Petitioner] knew of such relationship with [Victim] at the time referred to in paragraph First,

---

[43]   Instructions 1 and 2, Legal File, Resp'ts Ex. 5, at 33.

[44]   Instruction No. 4, Legal File, Resp'ts Ex. 5, at 38.

[45]   Instruction No. 6, Legal File, Resp'ts Ex. 5, at 40.

Then you will find [Petitioner] guilty under Count VI of incest.

> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [Petitioner] not guilty of that offense.

> As used in this instruction, the term "deviate sexual intercourse" means any act of sexual gratification between persons not lawfully married to one another, involving the genitals of one person and the mouth, tongue, or anus of another.[46]

(Footnote added.)  Additionally, the trial court instructed:

> As to Count VI, unless you find and believe from the evidence beyond a reasonable doubt that between April 17th, 2007 and October 15th, 2008, in the County of St. Louis, State of Missouri, [Petitioner] engaged in deviate sexual intercourse by placing his penis in [Victim]'s anus or by placing his mouth on [Victim]'s genitals or by placing [Victim]'s hand on his genitals, then you must find [Petitioner] not guilty of incest under Count VI . . . .[47]

(Footnote added.)

While deliberating, the jury sent the trial court several notes, including four regarding its inability to agree on a verdict for Counts I and II.[48]  The first of the four notes regarding the status of their deliberations stated the jury had reached a verdict on Counts III through VI but was "split on" Counts I and II and asked:  "Does it have to be 100% FOR or 100% against to reach a verdict in those two charges?"[49]  With the agreement of the parties, the trial court responded "[t]he verdict on each count must be unanimous."[50]  The next note received from the

---

[46] Instruction No. 17, Legal File, Resp'ts Ex. 5, at 51.

[47] Instruction No. 18, Legal File, Resp'ts Ex. 5, at 52.

[48] Jury Notes, Legal File, Resp'ts Ex. 5, at 55-65; Trial Tr., Resps.' Ex. 9, at 734-37, 740-44, 748-50, 752-55.

[49] Trial Tr., Vol. II, Resp'ts Ex. 9, at 741-42; Jury Request form, received at 8:41 p.m. on Dec. 17, 2009, Legal File, Resp'ts Ex. 5, at 59.

[50] Trial Tr., Vol. II, Resp'ts Ex. 9, at 741-42; Trial Court Response, at 8:48 p.m. on Dec. 17, 2009, Legal File, Resp'ts Ex. 5, at 60.

jury stated: "We still cannot agree on 1 and 2 but we are firm on 3 thru 6. Right now we are at 10 [not guilty] to 2 [guilty]. If this stays true do we have a hung jury for the whole trial or just Counts 1 and 2."[51] After conferring with counsel for both parties, the trial court decided to call the jury into the courtroom to review the verdicts on Counts III through VI and, if they were guilty verdicts, return the next day for continued deliberations and the punishment phase, or if they were not-guilty verdicts, give the jury the choice whether to continue deliberations the next day.[52] The jury returned to the courtroom at 9:55 p.m. The trial court accepted the guilty verdicts on Counts III through VI, after polling the jurors at Petitioner's request. The trial court recessed the proceedings until the next morning at 10:30 a.m.[53]

Early the next afternoon, the jury gave the trial court a note stating "[a]t this point . . . we are not going to change the mind of everybody to make it 100% either way. As of now we stand with" 8 guilty and 4 not guilty for Count I and 9 guilty and 3 not guilty for Count II.[54] The prosecutor asked the trial court to allow the jury to "keep deliberating" for up to an hour and Petitioner asked for a mistrial because the jury deliberated at length the prior day and three hours that day.[55] The trial court stated it was "going to grant the defense request to declare the jury hung on Counts 1 and 2" because they had deliberated approximately six hours the day before

---

[51] Trial Tr., Vol. II, Resp'ts Ex. 9, at 742-43; Jury Request form, received at 9:35 on Dec. 17, 2009, Legal File, Resp'ts Ex. 5, at 61.

[52] Trial Tr., Vol. II, Resp'ts Ex. 9, at 743.

[53] Trial Tr., Vol. II, Resp'ts Ex. 9, at 743-47.

[54] Trial Tr., Vol. II, Resp'ts Ex. 9, at 749; Jury Request form, received at 1:40 p.m. on Dec. 18, 2009, Legal File, Resp'ts Ex. 5, at 63.

[55] Trial Tr., Vol. II, Resp'ts Ex. 9, at 749.

and three and a half hours that day.[56]  The trial court stated it "was going to bring [the jurors] in and let them know that we are going to begin the punishment phase."[57]

Before the jury returned to the courtroom, however, the trial court and counsel conferred about instructions the State had prepared for the punishment phase.[58]  During the conference, the trial court received a note from the jury stating it had "changed all verdicts and we are now 11-1 on both counts but [the jury foreperson did not] think we can reach 100%."[59]  The prosecutor asked the trial court to allow the jury to keep deliberating, while Petitioner objected that the trial court's failure to respond to the last note and then send them lunch "was highly prejudicial" to Petitioner because it "may be read . . . by some as a subtle hint to, hey, you're heading in the right direction.  Just keep going and maybe you can turn that one person around."[60]  The trial court decided to send lunch to the jury because it was "nearly 2:30" and not to either declare a mistrial or "respond in writing to th[e] latest note."[61]  At about 3:15 p.m., the trial court received a note from the jury stating they had "come to an agreement on Counts 1 and 2."[62]  The jury

---

[56]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 749-50.

[57]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 750.

[58]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 750-52.

[59]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 752-53; Jury Request form, received 2:25 p.m. on Dec. 18, 2009, Legal File, Resp'ts Ex. 5, at 64.

[60]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 753-54.

[61]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 754.

[62]  Jury Request form, received 3:17 p.m. on Dec. 18, 2009, Legal File, Resp'ts Ex. 5, at 65; Trial Tr., Vol. II, Resp'ts Ex. 9, at 754-55.

found Petitioner guilty of Counts I and II, and the trial court accepted the verdicts after polling the jury.[63]

During the punishment phase, the State presented no additional evidence and Petitioner presented the testimony of Ms. Cooper, Mr. Morice, Mr. Henke, and Petitioner.[64] The prosecutor pointed out during closing argument in the punishment phase that the jury's sentencing assessment was a "recommendation" and the trial court "makes the final determination of sentence."[65] More specifically, the prosecutor argued:

> Only the Judge can run the counts concurrently or consecutively. You will simply look at the jury instruction and . . . fill in a number, and that's simply a recommendation. The Court makes the final determination of sentence. You simply make a recommendation. It's an important recommendation. I'm not downplaying your responsibility, but it's a recommendation that you're making. The Court, some months from now, will impose final sentencing, and I ask you again consider the full range of punishment, including life, if you think that's appropriate in this case, for violating this young girl repeatedly, intentionally, many, many times, some of the worst acts we can even imagine.[66]

(Footnote added.) While instructing the jury it "should consider . . . the argument of counsel,"[67] the trial court also instructed the jury the arguments of counsel "are not evidence."[68] The jury assessed punishment at seventeen years for the first-degree statutory rape offense, five years for

---

[63] Verdict forms for Counts 1 and 2, Legal File, Resp'ts Ex. 5, at 66-67; Trial Tr., Vol. II, Resp'ts Ex. 9, at 758-60.

[64] Trial Tr., Vol. II, Resp'ts Ex. 9, at 762-76.

[65] Trial Tr., Vol. II, Resp'ts Ex. 9, at 780.

[66] Trial Tr., Vol. II, Resp'ts Ex. 9, at 780.

[67] Instruction No. 23, Legal File, Resp'ts Ex. 5, at 75.

[68] Instruction No. 24, Legal File, Resp'ts Ex. 5, at 76.

each of the four first-degree statutory sodomy offenses, and three years for the incest offense.[69]

The trial court polled the jury before accepting the verdicts.[70]

Petitioner filed a motion for judgment of acquittal notwithstanding the verdict of the jury
or in the alternative for a new trial ("motion for new trial").[71]  In relevant part, Petitioner based
his motion for new trial on post-verdict statements two jurors made to defense counsel allegedly
demonstrating "the jury did not deliberate in accordance with the Instructions."[72]  Petitioner
reported one juror stated two others "had stated that they felt [Petitioner] was guilty before any
deliberations had started" and the jurors "interpreted the Court's silence [in response to the jury's
notes about being deadlocked] as directing them to continue to move toward guilty verdicts on
Counts 1 and 2."[73]  Additionally, Petitioner stated, the second juror, who was the foreperson,
"indicated that he felt that [Petitioner] had to be guilty merely due to the fact that the charges had
been filed."[74]  Petitioner argued "some of the issues" raised in the motion for new trial,
"particularly regarding some of the jury comments" rose "to the level of an evidentiary
hearing."[75]

Before sentencing Petitioner, the trial court denied Petitioner's motion for new trial and
evidentiary hearing.[76]  The trial court imposed a twenty-year term of imprisonment consisting of

---

[69]  Verdicts, Legal File, Resp'ts Ex. 5, at 77-88; Trial Tr., Vol. II, Resp'ts Ex. 9, at 793-94.

[70]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 794-96.

[71]  Pet'r Mot. New Trial, Legal File, Resp'ts Ex. 5, at 89-96.

[72]  Pet'r Mot. New Trial, Legal File, Resp'ts Ex. 5, at 94-95.

[73]  Pet'r Mot. New Trial, Legal File, Resp'ts Ex. 5, at 95.

[74]  Pet'r Mot. New Trial, Legal File, Resp'ts Ex. 5, at 95.

[75]  Sentencing Hr'g Tr., Resp'ts Ex. 9, at 2-3.

[76]  Sentencing Hr'g Tr., Resp'ts Ex. 9, at 4-5.

seventeen years for the first-degree statutory rape offense and five years for each of the four first-degree statutory sodomy offenses, with those sentences running concurrently to each other, plus three years for the incest offense, with that sentence running consecutively to the concurrent sentences on the first five offenses.[77]

After imposing sentence, the trial court examined Petitioner under oath "regarding the assistance of counsel that [Petitioner] received throughout the trial, and throughout the proceedings."[78] Petitioner acknowledged his trial attorney examined all of the State's witnesses, called several witnesses on Petitioner's behalf, did not fail to contact or call any witnesses Petitioner wanted her to present at trial, did not refuse to do anything Petitioner asked her to do to represent him, and did not do anything Petitioner asked her not to do in her representation of him.[79] Petitioner also stated he was satisfied with the legal services received from his trial attorney.[80]

Direct Appeal

In his timely direct appeal, Petitioner presented four points.[81] First, Petitioner argued the trial court violated his rights to due process and a fair trial under the Sixth and Fourteenth Amendments by coercing verdicts on Counts I and II through its reversal of the grant of a mistrial as to Counts I and II, failure to declare a mistrial when the jury continued to be

---

[77] Sentencing Hr'g Tr., Resp'ts Ex. 9, at 9-10; Sentence and J., filed Feb. 11, 2010, Legal File, Resp'ts Ex. 5, at 97-101.

[78] Sentencing Hr'g Tr., Resp'ts Ex. 9, at 10-14.

[79] Sentencing Hr'g Tr., Resp'ts Ex. 9, at 10-14.

[80] Sentencing Hr'g Tr., Resp'ts Ex. 9, at 14.

[81] Pet'r Br., Resp'ts Ex. 6, at 24-29.

deadlocked, and refusal to respond to the jury's notes about its deadlock.[82]   In his second point, Petitioner contended the trial court denied his Sixth and Fourteenth Amendment rights to due process and a fair trial by an impartial jury by denying Petitioner's motion for a new trial and request for a hearing on his allegations of juror misconduct.[83]   Petitioner asserted in his third point the trial court violated his Fourteenth Amendment rights to due process and a fair trial by not *sua sponte* striking or declaring a mistrial in response to the prosecutor's closing argument in the penalty phase that the jury's assessment of the sentences was "simply a recommendation."[84] For his fourth point, Petitioner urged the trial court violated his rights to due process, a fair trial, a unanimous verdict, and freedom from double jeopardy under the Fifth, Sixth, and Fourteenth Amendments by including the first paragraph of the verdict-directing instruction for the incest offense.  Specifically, Petitioner contended the first paragraph of that instruction allowed the jury to find Petitioner guilty of incest based on any one of three suggested predicate acts of deviate sexual conduct so that the jury could find Petitioner guilty of the offense without unanimously finding Petitioner engaged in the same predicate act.[85]

The Missouri Court of Appeals affirmed the judgment.[86]   The Court of Appeals first described the background of the case as follows:

> [Petitioner] was charged with one count of first degree statutory rape, four counts of first degree sodomy, and one count of incest based on allegations that he had sexually abused his 11-year-old daughter, who disclosed information about

---

[82]  Pet'r Br., Resp'ts Ex. 6, at 24-25.

[83]  Pet'r Br., Resp'ts Ex. 6, at 26.

[84]  Pet'r Br., Resp'ts Ex. 6, at 27.

[85]  Pet'r Br., Resp'ts Ex. 6, at 28.

[86]  State v. Cooper, No. ED94453, Opinion, (Mo. Ct. App. filed Mar. 29, 2011), Resp'ts Ex. 8.

the alleged abuse to her teacher. A week later, police questioned [Petitioner], who initially denied the allegations but then admitted . . . the abuse.

At trial, [Petitioner] testified that he had never sexually abused his daughter. The jury returned guilty verdicts on all charges and recommended sentences of seventeen years for the statutory rape charge, five years for each sodomy charge, and three years for the incest charge. Following the jury's recommendation, the trial court sentenced [Petitioner] to twenty years imprisonment.[87]

(Footnote added.)

With regard to Petitioner's first point challenging the verdicts on Counts I and II as coerced based on the trial court's "reconsider[ation of] its initial grant of a mistrial, fail[ure] to ultimately declare a mistrial, and [failure to] respond[] to jury notes regarding the deadlock," the Court found Petitioner "did not preserve any of the three alleged errors for appeal" and reviewed the point for plain error only.[88] The Court concluded Petitioner

did not suffer manifest injustice[, which is required for plain error,] when the trial court refused to grant a mistrial and instead allowed the jury to continue deliberations without responding to their notes regarding their deadlock. The length of time which a jury is allowed to deliberate is within the sound discretion of the trial court. State v. Snider, 869 S.W.2d 188, 192 (Mo. [Ct.] App. . . . 1993). The trial judge may attempt to facilitate a verdict by giving no additional instruction and allowing further time for deliberation even when a jury indicates that further deliberations would not be helpful in resolving the deadlock. State v. Anderson, 698 S.W.2d 849, 853 (Mo. banc 1985). The record shows that after advising the jury that any verdict needed to be unanimous, the trial court planned to declare a mistrial on the two undecided counts, but then the jury sent another note indicating progress in deliberations. Because the jury had continued deliberating on its own, the trial court made the decision to let the deliberations continue without a response, and within the hour, the jury reached a unanimous verdict on both counts. Nothing in the record indicates that the trial court said or did anything that implied the jury had to reach a verdict. The record also shows that the jury was polled, with each juror affirming his or her guilty verdict. The

---

[87] Cooper, No. ED94453, Opinion, Resp't's Ex. 8, at 1-2.

[88] Cooper, No. ED94453, Opinion, Resp't's Ex. 8, at 2.

record further shows that the jury recommended sentences above the minimum, also indicating that the verdict was not coerced. Point denied.[89]

(Footnote added.)

The Court denied Petitioner's second point, challenging the trial court's denial of Petitioner's motion for new trial and request for a hearing on Petitioner's allegations of juror misconduct, on its merits.[90] After discussing Missouri case law setting forth the principle "a juror cannot impeach his own verdict or the verdict of a jury of which he was a member," the Court concluded, "[t]he jurors' statements, upon which [Petitioner] relies, related to the decision-making processes that transpired during jury deliberations and therefore cannot be used by [Petitioner] to impeach the verdict. Point denied."[91]

With regard to Petitioner's third point, asserting the trial court erred by failing to strike the prosecutor's closing argument that the jury's sentencing assessment was "simply a recommendation," the Court concluded it did not need to address the point because Petitioner "expressly abandoned it."[92] In denying Petitioner's fourth point challenging the incest offense verdict-director, the Court stated Petitioner "concede[d] that there was no objection to [the incest verdict-directing instruction], and thus the point is not preserved for appeal."[93] Reviewing the alleged instructional error for plain error, the Court found the "disjunctive verdict director[] did not result in manifest injustice" for two reasons.[94] First, the Court concluded "the record shows

---

[89] Cooper, No. ED94453, Opinion, Resp'ts Ex. 8, at 3.

[90] Cooper, No. ED94453, Opinion, Resp'ts Ex. 8, at 3-4.

[91] Cooper, No. ED94453, Opinion, Resp'ts Ex. 8, at 4.

[92] Cooper, No. ED94453, Opinion, Resp'ts Ex. 8, at 5.

[93] Cooper, No. ED94453, Opinion, Resp'ts Ex. 8, at 5.

[94] Cooper, No. ED94453, Opinion, Resp'ts Ex. 8, at 5.

that there was overwhelming evidence of [Petitioner]'s guilt."[95]   Additionally, the Court found "the jury was instructed that any verdict needed to be unanimous" and "[a]ll given instructions must be considered together."[96]   The Court issued its mandate on April 20, 2011.[97]

Post-Conviction Motion Proceeding

Following his direct appeal, Petitioner timely filed a *pro se* motion for post-conviction relief ("PCR motion") presenting five claims of trial court error.[98]   Through appointed counsel, Petitioner filed an amended PCR motion, including a request for an evidentiary hearing.[99]   In his amended PCR motion, Petitioner set forth three claims his trial attorney provided ineffective assistance of counsel in violation of Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments.[100]   Specifically, in his first claim, Petitioner urged his trial attorney provided ineffective assistance of counsel by "failing to interview, properly investigate, subpoena and call as material witnesses, [Victim's two younger siblings], whose testimony was necessary to provide [Petitioner] with a viable defense."[101]   With regard to his second claim, Petitioner asserted his trial attorney provided ineffective assistance of counsel by "failing to introduce evidence that [Victim] made similar false accusations against [Petitioner's brother, Mr.]

---

[95] <u>Cooper</u>, No. ED94453, Opinion, Resp'ts Ex. 8, at 5.

[96] <u>Cooper</u>, No. ED94453, Opinion, Resp'ts Ex. 8, at 5.

[97] <u>See</u> Apr. 20, 2011 entry on docket sheet for <u>State v. Cooper</u>, No. ED94453 (Mo. Ct. App. filed Feb. 22, 2010) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do; last visited May 5, 2017).

[98] Pet'r PCR Mot., filed June 22, 2011, PCR Legal File, Resp'ts Ex. 1, at 3-9.

[99] Pet'r Am. PCR Mot., filed Oct. 5, 2011, PCR Legal File, Resp'ts Ex. 1, at 16-25.

[100] Pet'r Am. PCR Mot., Resp'ts Ex. 1, at 17-21.

[101] Pet'r Am. PCR Mot., Resp'ts Ex. 1, at 17-20.

Henke."[102]   For his third claim, Petitioner contended his trial attorney provided ineffective assistance of counsel by "failing to introduce evidence that DNA testing was performed on items, specifically a rag, retrieved from [Victim], and the tests showed no DNA from [Petitioner]."[103]

The motion court denied Petitioner's request for an evidentiary hearing and concluded Petitioner was not entitled to post-conviction relief.[104]   Petitioner timely appealed the motion court's judgment, specifically challenging the motion court's disposition of the first two claims of ineffective assistance of counsel in his amended post-conviction motion.[105]

<u>Post-Conviction Appeal</u>

In the first point of his post-conviction appeal, Petitioner alleged the denial of post-conviction relief without a hearing violated his rights to the effective assistance of counsel, a fair trial, and due process under the Fifth, Sixth, and Fourteenth Amendments in that his trial attorney failed to investigate and call Victim's two younger siblings as witnesses.[106] Petitioner asserted Victim's siblings "would have testified that [Victim] told each [of them] to lie and to corroborate her accusations about [Petitioner] to police detectives."[107]   With regard to his second point, Petitioner argued the denial of post-conviction relief without a hearing violated his rights to the effective assistance of counsel, a fair trial, the presentation of a defense and due process under

---

[102]  Pet'r Am. PCR Mot., Resp'ts Ex. 1, at 20.

[103]  Pet'r Am. PCR Mot., Resp'ts Ex. 1, at 20-21.

[104]  Mot. Ct.'s Findings of Fact, Conclusions of Law, and J., filed Mar. 6, 2012,  PCR Legal File, Resp'ts Ex. 1, at 27-33.

[105]  <u>See</u> Pet'r Br., Resp'ts Ex. 2, at 11 and 12.

[106]  Pet'r Br., Resp'ts Ex. 2, at 11.

[107]  Pet'r Br., Resp'ts Ex. 2, at 11.

the Fifth, Sixth, and Fourteenth Amendments in that his trial attorney failed to "introduce false allegation evidence" by failing to call "the Division of Family Services [DFS] caseworker who had investigated allegations made by [Victim] against [Petitioner's brother] and who determined those allegations to be unfounded, and [Petitioner's brother] who would have denied [Victim]'s allegations."[108]

The Missouri Court of Appeals affirmed the motion court's judgment in a summary order accompanied by a more detailed memorandum.[109] After summarizing Petitioner's post-conviction motion proceedings and discussing the two-pronged test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), to establish an ineffective assistance of counsel claim, the Court denied each of Petitioner's points on appeal.[110]

With regard to Petitioner's contention that his trial attorney provided ineffective assistance in failing to investigate Victim's two younger siblings and call them as witnesses at trial, the Court found

> To warrant relief [o]n his claim that counsel was ineffective for failing to call a witness, a [post-conviction] movant must show: (1) the trial counsel knew or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have provided a viable defense. <u>Phillips v. State</u>, 214 S.W.3d 361, 366 (Mo. [Ct.] App. . . . 2007). Trial counsel's decision to not call a witness is presumed to be trial strategy and will not support a movant's claim unless he can clearly establish otherwise. <u>Id.</u> The witness's testimony must unqualifiedly support the movant or the failure to call the witness does not constitute ineffective assistance of counsel. <u>Id.</u> Further, where a movant's motion for post-conviction relief avers his lawyer rendered ineffective assistance

---

[108] Pet'r Br., Resp'ts Ex. 2, at 12.

[109] <u>Cooper v. State</u>, No. ED98341, Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b) (Mo. Ct. App. filed Feb. 26, 2013) (per curiam), Resp'ts Ex. 4.

[110] <u>Cooper</u>, No. ED98341, Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), Resp'ts Ex. 4, at 2-7.

of counsel for failing to present a witness at trial, the motion must state the facts to which the unproduced witness would have testified; if the [m]ovant fails to do so, the [m]ovant is not entitled to an evidentiary hearing. State v. Jennings, 815 S.W.2d 434, 449 (Mo. [Ct.] App. . . . 1991)[.]

[Petitioner] contends [Victim] had her [younger] brother and sister lie to the police about what happened and to corroborate her story. Thus, he argues his trial counsel was ineffective for failing to elicit such evidence from them.

However, [Petitioner] testified at sentencing there were no witnesses that he wanted trial counsel to call to testify at trial that she did not contact or call. [Petitioner] also stated there was not anything he asked trial counsel to do that she refused to do, and there was nothing he requested that she not do that she did anyway. [Petitioner] also indicated he was satisfied with his trial counsel's services. Further, the motion court noted the list of witnesses [Petitioner] gave to his trial counsel before trial did not include [Victim's younger] brother and sister . . . . . This list does not appear in the record. Thus, [Petitioner] has failed to show his trial counsel knew or should have known of these witnesses. Lastly, [Petitioner] has failed to state the facts to which these unproduced witnesses would have testified.

Therefore, we find the motion court did not clearly err in denying [Petitioner's] 29.15 motion for post-conviction relief because his trial counsel was not ineffective for failing to investigate and call the [younger] brother and sister of [Victim]. Point denied.[111]

(Footnote added.)

In his second point, Petitioner argued his trial attorney provided ineffective assistance of counsel by failing to present as witnesses his brother, Mr. Henke, "who would have denied [Victim's] allegations" against him and "the [DFS] caseworker who had investigated allegations made by [V]ictim against [Petitioner's brother]."[112] With regard to this point, the Missouri Court of Appeals found:

In fact, [Petitioner's brother] was called as a witness. Further, [Petitioner] did not allege his trial counsel failed to call [his brother] as a witness in his

---

[111] Cooper, No. ED98341, Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), Resp'ts Ex. 4, at 4-5.

[112] Pet'r Br., Resp'ts Ex. 2, at 12.

original motion. Thus, this aspect of [Petitioner]'s claim cannot be raised on appeal. Rule 29.15(d); Cloyd v. State, 302 S.W.3 804, 807 (Mo. [Ct.] App. . . . 2010).

[Petitioner]'s amended motion asserted that [Petitioner] became aware prior to trial that [Victim] had made false accusations against [Petitioner's brother] and that DFS found the allegations to be unsubstantiated, but [Petitioner] did not assert that he made this information available to trial counsel before trial. Trial counsel cannot be deemed ineffective for failing to act on information of which she was not made aware.

Further, [Petitioner]'s trial counsel's decision not to call someone from DFS was reasonable strategy because there was no showing that [Victim]'s allegation[s] against [Petitioner's brother] were unsubstantiated and there was evidence indicating the allegations were valid in that [Victim] was removed from [Petitioner's brother]'s home.

Lastly, as noted above, [Petitioner] testified there were no witnesses that he wanted trial counsel to call to testify at trial that she did not contact or call. Further, he testified there was not anything that he asked trial counsel to do that she refused to do, and there was nothing that he requested that she not do that she did anyway. [Petitioner] also indicated that he was satisfied with trial counsel's services.[113]

(Footnote added.) The Court issued its mandate on February 26, 2013.[114]

## II. Petitioner's Grounds for Federal Habeas Relief

In his timely federal habeas petition, Petitioner seeks relief on the following six grounds:

1. The trial court violated Petitioner's rights to due process and a fair trial under the Sixth and Fourteenth Amendments by reversing the grant of a mistrial and coercing a verdict on Counts I and II;

2. The trial court violated Petitioner's rights to due process and a fair trial under the Sixth and Fourteenth Amendments because the jury did not deliberate in accordance with the trial court's instructions;

3. The trial court violated Petitioner's rights to due process and a fair trial under the Sixth and Fourteenth Amendments when the prosecutor repeatedly told the

---

[113] Cooper, No. ED98341, Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), Resp'ts Ex. 4, at 6.

[114] See Feb. 26, 2013 entry on docket sheet for Cooper, No. ED98341 (Mo. Ct. App. filed Apr. 16, 2012) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do; last visited May 5, 2017).

jury its sentencing decision was "simply a recommendation," which "encourage[ed] the jury to return longer sentences";

4. The trial court violated Petitioner's rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments when the incest verdict director "allowed the possibility that the jury failed to unanimously find the same act of deviate sexual intercourse as the predicate crime";

5. The trial attorney provided ineffective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments because Petitioner's trial attorney "failed to investigate and call as witnesses [Victim]'s [younger] brother and sister who would have testified that [Victim] asked them to lie to corroborate her accusations against Petitioner"; and

6. The trial attorney provided ineffective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments because Petitioner's trial attorney "failed to introduce evidence that [Victim] had made prior false allegations similar to those against Petitioner, and thus impeach[] the credibility of [Victim]."[115]

Respondents counter that this Court is barred from considering the merits of the grounds either reviewed by the Missouri Court of Appeals under a plain error standard of review or abandoned by Petitioner.[116] To the extent the Court may reach the merits of Petitioner's grounds, Respondents argue the grounds lack merit because the state court decisions addressing the issues are neither incorrect nor unreasonable applications of clearly established federal law and are not based on unreasonable determinations of the facts in light of the evidence presented in the state court proceedings.[117]

### III. Discussion of Grounds for Habeas Relief

(A) Trial court errors – Grounds one through four

Respondents argue the Court cannot consider the merits of certain grounds for relief because Petitioner defaulted them by either failing properly to object during trial or abandoning

---

[115] Pet'r Pet'n [ECF No. 1 at 5, 6, 8, 10, 11, 12, 19-24].

[116] Resp'ts Response [ECF No. 8].

[117] Resp'ts Response [ECF No. 8].

the issue on appeal. While Petitioner acknowledges the Missouri Court of Appeals provided only plain error review of ground four due to his conceded failure to object during trial to the incest offense verdict director, Petitioner contends plain error review by the Missouri Court of Appeals allows a federal habeas court to consider the merits of the ground for relief subject to such review. Respondents contend the Court may reach the merits of the alleged trial court error in ground two and should deny that ground for relief because the Missouri Court of Appeals' decision on direct appeal is consistent with and not an incorrect or unreasonable application of Tanner v. United States, 483 U.S. 107 (1987). Petitioner counters the Missouri Court of Appeals' decision regarding the alleged trial court error in ground two was contrary to and an unreasonable application of Tanner.

      1. Procedural default – Grounds one, three, and four

        (a.) Failure to Exhaust

Before seeking federal habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, a habeas petitioner "must exhaust available state remedies by fairly presenting [any federal] claim in each appropriate state court." Nash v. Russell, 807 F.3d 892, 898 (8th Cir. 2015) (internal quotation marks omitted) (quoting Baldwin v. Reese, 541 U.S. 27, 29 (2004)), cert. denied, 136 S. Ct. 1825 (2016). To satisfy the exhaustion requirement a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011) (internal quotation marks omitted) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). Claims that have not been exhausted and fairly presented to the state courts are procedurally defaulted. Wemark v. Iowa, 322 F.3d 1018, 1022 (8th Cir. 2003) (quoting Gray v. Netherland, 518 U.S. 152, 161-62 (1996)).

To exhaust a federal constitutional claim, a petitioner must present the claim to the state courts "in accordance with state procedural rules." Arnold v. Dormire, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (internal quotation marks omitted) (quoting Beaulieu v. Minnesota, 583 F.3d 570, 573 (8th Cir. 2009)). In Missouri state court proceedings, a litigant must raise constitutional claims at the earliest opportunity and preserve them throughout the proceedings. State v. Liberty, 370 S.W.3d 537, 546 (Mo. 2012) (en banc) (citing State v. Wickizer, 583 S.W.2d 519, 523 (Mo. 1979) (en banc)). Alleged trial court errors must be raised on direct appeal in Missouri. See, e.g., Middleton v. State, 103 S.W.3d 726, 740 (Mo. 2003) (en banc) (alleged trial court error in admitting a letter "constitutes a claim of trial error in the admission of [a] document [that] must be raised on direct appeal and [is] not cognizable in a post-conviction motion").

With regard to the first ground for relief, alleging the trial court violated Petitioner's rights to due process and a fair trial by coercing verdicts on Counts I and II, the Missouri Court of Appeals set forth state case law for the propositions that, to preserve an issue for appeal, a litigant must assert a timely and specific objection during trial; a litigant waives grounds not raised by timely, specific objection during trial; and changing the grounds for an objection on appeal is prohibited.[118] The Court of Appeals then concluded Petitioner had not preserved any of the bases for his contention the trial court coerced verdicts on Counts I and II.[119]

Neither party challenges, for purposes of this federal habeas action, the propriety of the Court of Appeals' conclusion that plain error review applied to that point on appeal. Importantly, "it is not the province of a federal habeas court to reexamine state-court

---

[118] Cooper, ED94453, Opinion, Resp'ts Ex. 8, at 2.

[119] Cooper, ED94453, Opinion, Resp'ts Ex. 8, at 2.

determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).

Rather, "[d]eterminations of state law by the Missouri Court of Appeals are binding" on a federal

habeas court. <u>Crump v. Caspari</u>, 116 F.3d 326, 327 (8th Cir. 1997). Therefore, the Court need

not address whether the state appellate court properly determined the adequacy of Petitioner's

objections during trial or the effect of that determination on the appellate court's consideration of

Petitioner's point on appeal. The Missouri Court of Appeals' decision on direct appeal

demonstrates that ground one is procedurally defaulted due to Petitioner's failure properly to

present timely and specific objections during trial that were pursued on direct appeal.

For the third ground for relief challenging as violating Petitioner's rights to due process

and a fair trial the trial court's failure *sua sponte* to respond to the prosecutor's closing argument

referring to the jury's assessment of a sentence as "simply a recommendation," the Missouri

Court of Appeals concluded it "need not address" the issue because Petitioner "expressly

abandoned the point."[120] Therefore, ground three is procedurally defaulted because Petitioner's

abandonment of the point on direct appeal did not give the Missouri Court of Appeals "a full

opportunity" to resolve the constitutional issues presented in that ground. <u>See</u> <u>O'Sullivan</u>, 526

U.S. at 845 ("state prisoners must give the state court one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established appellate review

process").

For the due process and fair trial challenge to the incest verdict-director Petitioner

pursues in ground four, the Missouri Court of Appeals stated a specific objection during trial was

needed to preserve alleged instructional error for appellate review and, as Petitioner conceded,

---

[120] <u>Cooper</u>, ED94453, Opinion, Resp'ts Ex. 8, at 5.

Petitioner had not objected to the verdict-directing instruction for the incest offense during trial.[121] As with ground one, the Court is bound by the Court of Appeals' conclusion Petitioner procedurally defaulted ground four by failing to present the trial court with specific, timely objections to the incest verdict-director during trial.

(b.) Avoiding procedural default – Establishing
cause and prejudice or a miscarriage of justice

A federal habeas court may not reach the merits of a federal constitutional claim procedurally defaulted due to a petitioner's failure to follow applicable state rules in raising the claim in state court, unless a petitioner demonstrates either cause and prejudice or a miscarriage of justice. Sawyer v. Whitley, 505 U.S. 333, 338-39 (1992); accord Skillicorn v. Luebbers, 475 F.3d 965, 976-77 (8th Cir. 2007) ("Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claim"). "Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . 'impeded [his] efforts to comply with the State's procedural rule.'" Maples v. Thomas, 565 U.S. 266, 281 (2012) (alterations and emphasis in original) (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)). Notably, "the precise contours of the cause requirement have not been clearly defined." Ivy v. Caspari, 173 F.3d 1136, 1140 (8th Cir. 1999). If a petitioner does not establish cause for the procedural default, a habeas court need not determine whether he demonstrated actual prejudice. Cagle v. Norris, 474 F.3d 1090, 1099 (8th Cir. 2007).

---

[121] Cooper, ED94453, Opinion, Resp'ts Ex. 8, at 5.

To invoke the alternative miscarriage of justice exception to the procedural default rule, a petitioner must present new evidence affirmatively demonstrating that he is innocent of the crime for which he was convicted. Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006). "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" Cagle, 474 F.3d at 1099 (quoting Schlup v. Delo, 513 U.S. 298, 316 (1995)).

Noting the Eighth Circuit has recognized an intra-circuit split of authority about whether a state appellate court's plain error review bars a federal habeas court from addressing the merits of a ground for habeas relief or permits a federal habeas court to consider the merits of the ground for manifest injustice as a matter of plain error, Hornbuckle v. Groose, 106 F.3d 253, 257 (8th Cir. 1997), Respondents urge the Court not to address the merits of the grounds reviewed only for plain error, citing Hayes v. Lockhart, 766 F.2d 1247, 1252-53 (8th Cir. 1985). Petitioner contends the Court must consider the merits of a ground for relief subjected to plain error review by a state court of appeals.

The grounds reviewed by the Missouri Court of Appeals only for plain error are ground one, in which Petitioner argues the trial court violated his rights to due process and a fair trial by coercing a verdict, and ground four in which Petitioner asserts the trial court violated his rights to due process and a fair trial by allowing the jury to reach a guilty verdict without unanimous agreement on the predicate conduct needed for an incest conviction. The Eighth Circuit recently held that Hayes, supra, governs the issue whether a federal habeas court may consider the merits of a ground reviewed by a state court of appeals only for plain error. Clark v. Bertsch, 780 F.3d 873 (8th Cir. 2015). More specifically, the Eighth Circuit concluded: "Hayes holds a federal

habeas court cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error." <u>Clark</u>, 780 F.3d at 874. Therefore, the Court of Appeals' plain error review of the issues Petitioner pursues in grounds one and four does not allow this Court to address the merits of those grounds for relief absent a showing of cause and prejudice or a miscarriage of justice.

Petitioner has not presented the Court with any external impediment that arguably caused him either to abandon on direct appeal his challenge to the trial court's response to the prosecutor's closing argument (ground three) or to fail to pursue proper objections during trial to the trial court's handling of the jury deliberations regarding Counts I and II (ground one) and the trial court's verdict-directing instruction for the incest offense in Count VI (ground four). Because Petitioner has not established the requisite cause, the Court need not consider whether Petitioner has demonstrated the prejudice required to overcome the procedural default of grounds one, three, and four. <u>Cagle</u>, 474 F.3d at 1099. Additionally, Petitioner has not either submitted any new evidence of his actual innocence or alleged such evidence exists. Therefore, neither cause and prejudice nor a miscarriage of justice exists to avoid the procedural default of Petitioner's claims of trial court error in grounds one, three, and four. The Court denies grounds one, three, and four, without addressing their merits, as procedurally barred.

### 2. Merits – Ground two

In ground two, Petitioner alleges the trial court violated his rights to due process and a fair trial under the Sixth and Fourteenth Amendments because the jury did not deliberate in accordance with the trial court's instructions. Respondents counter that the Missouri Court of Appeals' decision on this juror misconduct issue in Petitioner's direct appeal is not contrary to or an unreasonable application of the United States Supreme Court decision in <u>Tanner</u>, <u>supra</u>.

(a.)  Legal Standard - Merits

The Court is bound by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), see 28 U.S.C. § 2254(d), to exercise "only limited and deferential review of underlying state court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). A federal court may not grant relief to a state prisoner unless a state court's adjudication of a claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000) ("Taylor"). If a state court's decision is not "contrary to" clearly established law, then the "unreasonableness" standard applies, which is "meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Taylor, 529 U.S. at 407-08; see also id. at 413.

The "clearly established Federal law" requirement of habeas review requires the habeas court to consider only United States Supreme Court precedent in force when a state court issues its decision on the merits. Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011) (relying on Cullen v.

Pinholster, 563 U.S. 170 (2011)).  State courts are not required to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Revels v. Sanders, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)).  Importantly, in reviewing state court decisions to ascertain whether they either contradict or unreasonably apply clearly established federal law, a federal habeas court "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 563 U.S. at 181-82.

"Finally, a state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record.  28 U.S.C. § 2254(e)(1)."  Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004).  Under the AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The presumption of correctness applies to the factual determinations made by a state court at either the trial or appellate levels, Smulls v. Roper, 535 F.3d 853, 864-65 (8th Cir. 2008) (en banc), and to a state court's implicit findings of fact, Grass v. Reitz, 749 F.3d 738, 743 (8th Cir. 2014). Likewise, federal habeas courts defer to state court credibility determinations.  Smulls, 535 F.3d at 864.

### (b.)  Juror misconduct – Ground two

For his second ground based on alleged juror misconduct, Petitioner asserts "the Jury did not deliberate in a fair and impartial manner in accord with the trial court's instructions."[122]  In

---

[122]  Pet'r Reply at 6 [ECF No. 16].

particular, Petitioner states one juror advised defense counsel that two other jurors believed Petitioner "was guilty before deliberations ever began" and one juror, the foreperson, reported to defense counsel he "believed Petitioner was guilty simply because the charges had been filed." Respondents urge the Missouri Court of Appeals' denial of the claim on direct appeal is a correct and reasonable application of the United States Supreme Court's decision in <u>Tanner</u>, <u>supra</u>, which Petitioner disputes.

In his second point on direct appeal, Petitioner challenged the trial court's denial of his motion for new trial and request for a hearing on alleged juror misconduct as a violation of his rights to due process and a fair trial by an impartial jury under the Sixth and Fourteenth Amendments.[123]   In summarizing Petitioner's point, the Missouri Court of Appeals stated Petitioner argues the trial court "refus[ed] to grant a new trial or evidentiary hearing for juror misconduct based on alleged statements by two jurors during a post-trial interview with defense counsel."[124]   The Court of Appeals denied the point upon concluding the "jurors' statements, upon which [Petitioner] relies, related to the decision-making processes that transpired during jury deliberations and therefore cannot be used by [Petitioner] to impeach the verdict."[125]   In support of its decision, the Missouri Court of Appeals set forth principles that "a juror cannot impeach his own verdict or the verdict of a jury of which he is a member," citing <u>State v. Keller</u>, 104 S.W.2d 247, 249 (Mo. 1937), and "'cannot be allowed to violate the secrets of the jury room, and tell of any partiality or misconduct that transpired there, nor speak of the motives which induced or operated to produce the verdict'" (quoting <u>State v. Strong</u>, 263 S.W.3d 636,

---

[123]  Point II of Pet'r Br., Resp'ts Ex. 6, at 26.

[124]  <u>Cooper</u>, No. ED94453, Opinion, Resp'ts Ex. 8, at 3.

[125]  <u>Cooper</u>, No. ED94453, Opinion, Resp'ts Ex. 8, at 4.

653 (Mo. 2008) (en banc)).[126]  Respondents argue this appellate court decision is consistent with Tanner, supra.

In Tanner, the Supreme Court addressed the defendants' requests to interview jurors and have an evidentiary hearing due to allegations jurors were intoxicated during trial.  Tanner, 483 U.S. at 110.  In particular, one of the jurors had reported to Tanner's attorney "that several of the jurors consumed alcohol during the lunch breaks at various times throughout the trial, causing them to sleep through the afternoons."  Id. at 113.  The district court received memoranda from the parties and heard argument, and concluded "juror testimony on intoxication was inadmissible under Federal Rule of Evidence 606(b) to impeach the jury's verdict."  Id.  The district court permitted the parties to provide non-juror evidence and subsequently entered an order concluding it was "not required or appropriate" to either interview the jurors or have an evidentiary hearing "at which jurors would be witnesses," and denied the motion for new trial.  Id. at 113, 115.

The defendants in Tanner filed a second motion for new trial along with a sworn statement of another juror providing additional details about various jurors' consumption of alcohol and illegal drugs during trial.  Id. at 115-16.  The district court denied the second motion while acknowledging the motion had allegations of juror misconduct "differ[ing] quantitatively but not qualitatively from those in the" first motions.  Id. at 116.  The Eleventh Circuit affirmed and the Supreme Court granted certiorari, in relevant part, "to consider whether the District Court was required to hold an evidentiary hearing, including juror testimony, on juror alcohol and drug use during the trial."  Id.  In pertinent part, the defendants argued, "an evidentiary hearing including juror testimony on drug and alcohol use is compelled by their Sixth Amendment right to a competent jury."  Id. at 116-17, see also id. at 126.

---

[126]  Cooper, No. ED94453, Opinion, Resp'ts Ex. 8, at 4.

In addressing the defendants' argument the constitution required a hearing at which jurors would testify, the Supreme Court acknowledged a defendant has a right to "'a tribunal both impartial and mentally competent to afford a hearing.' Jordan v. Massachusetts, 225 U.S. 167, 176 (1912)." Tanner, 483 U.S. at 126. After noting "long-recognized and very substantial concerns support the protection of jury deliberations from intrusive inquiry,"[127] the Supreme Court upheld the district court's denial of a second post-verdict evidentiary hearing as unnecessary under the Sixth Amendment "based on the inadmissibility of juror testimony and insufficiency of the non-juror evidence" the defendants offered. Id. at 127. The Court concluded that the defendants' "Sixth Amendment interests in an unimpaired jury . . . are protected by several aspects of the trial process." Id. Specifically, the Supreme Court enumerated the following aspects of the trial process as protecting the defendants' Sixth Amendment interests in an unimpaired jury: voir dire, during which defendants examine each individual's "suitability . . . for the responsibility of jury service"; the ability of the court, counsel, and court personnel to

---

[127] The Supreme Court discussed these concerns in its earlier discussion rejecting the defendants' argument that "juror testimony on [jurors'] ingestion of drugs or alcohol during the trial is not barred by Federal Rule of Evidence 606(b)." Tanner v. United States, 483 U.S. 107, 116 (1987). In its discussion of Rule 606(b), the Supreme Court set forth "the near-universal and firmly established common-law rule in the United States flatly prohibit[ing] the admission of juror testimony to impeach a jury verdict," except when an "extraneous influence" or "external influence" allegedly affected the jury verdict. Id. at 117. The Supreme Court noted the "external/internal distinction" was based on "the nature of the allegation," rather than on the location of the juror "when the alleged irregularity took place." Id. Significantly, the Supreme Court acknowledged, "allegations of the physical or mental incompetence of a juror" are treated "as 'internal' rather than 'external' matters." Id. at 118. "Substantial policy considerations support the common-law rule against the admission of jury testimony to impeach a verdict," the Supreme Court observed, including a "weighty government interest in insulating the jury's deliberative process" and an effort not to "disrupt the finality of the process." Id. at 119-20. Additionally, the Supreme Court stated, "a barrage of postverdict scrutiny of juror conduct" would undermine "full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople." Id. at 120-21 (citing Note, Public Disclosures of Jury Deliberations, 96 Harv. L. Rev. 886, 888-92 (1983)). The Supreme Court concluded Rule 606(b) "is grounded in the common-law rule against admission of jury testimony to impeach a verdict and the exception for juror testimony relating to extraneous influences." Tanner, 483 U.S. at 121. After finding the legislative history of the Rule supported the interpretation, the Supreme Court decided, "juror intoxication is not an 'outside influence' about which jurors may testify to impeach their verdict," and even if the exception applied, the evidence offered by the defendants fell "far short" of the applicable standard. Id. at 121-25.

observe the jury during trial; the ability of jurors to observe each other and "report inappropriate juror behavior to the court *before* they render a verdict" (emphasis in original); and the ability of a litigant to "seek to impeach the verdict by non-juror evidence of misconduct." Id.

Petitioner argues Tanner is distinguishable and an evidentiary hearing should have been held to protect Petitioner's Sixth Amendment right to an impartial and competent jury due to the jury foreperson's admission that he "believed Petitioner was guilty simply because the charges had been filed."[128] Petitioner contends the admission demonstrates the juror "lied during *voir dire*, [and] nothing but an evidentiary hearing on a motion for new trial . . . can protect a defendant's constitutional right to an impartial jury."[129]

The Court disagrees. The fact that the *voir dire* process may not have disclosed a juror's perspective that a person may be guilty due to the filing of a criminal charge does not support a finding that the challenge here arises out an external influence that may be subject to a post-verdict evidentiary hearing at which juror testimony may be presented. Petitioner does not argue the trial court prohibited *voir dire* or so severely limited *voir dire* as to essentially preclude the parties from engaging in *voir dire*. To the contrary, the available record demonstrates the parties engaged in extensive *voir dire* examination of both the panel of prospective jurors and certain panel members individually at the start of Petitioner's trial.[130] Nor does Petitioner present or propose (1) any non-juror evidence of alleged juror misconduct or (2) any evidence that external matters influenced or adversely affected the jury's deliberations. The only reported evidence Petitioner has to support his challenge is the testimony of or evidence provided after the verdict

---

[128] Pet'r Reply at 7 [ECF No. 16].

[129] Pet'r Reply at 7 [ECF No. 16].

[130] See Trial Tr., Vol. I, Resp'ts Ex. 9, at 14-263.

by jurors who participated in the deliberations. The evidence Petitioner relies on and Petitioner's challenge are internal in nature, directly focusing on jurors' perspective on deliberations and the basis for a juror's conclusion Petitioner is guilty of the charged offenses. As stated in <u>Tanner</u>, <u>supra</u>, such matters are constitutionally protected by various aspects of the trial process other than a post-verdict evidentiary hearing at which juror testimony may be presented. The Supreme Court decision in <u>Tanner</u> forecloses Petitioner's requested inquiry and constitutional challenge based on jury misconduct.[131]

The Missouri Court of Appeals' decision affirming the denial of Petitioner's juror misconduct challenge to the trial court's judgment is not an incorrect or unreasonable application of <u>Tanner</u>. Furthermore, the Court of Appeals' decision is not based on an unreasonable determination of the facts in light of the evidence presented to the state courts. The Court denies ground two on its merits.

---

[131] After <u>Tanner</u>, the Supreme Court addressed other challenges to alleged juror misconduct. In <u>Warger v. Shauers</u>, 135 S. Ct. 521 (2014), the Court held the anti-impeachment rule in Fed. R. Evid. 606(b) "applies to juror testimony during a proceeding in which a party seeks to secure a new trial on the ground that a juror lied during *voir dire*," because a post-verdict motion for new trial on the ground of *voir dire* dishonesty challenges the validity of the verdict. <u>Id.</u> at 525, 528. The Supreme Court further stated,

> [a] party's [constitutional] right to an impartial jury remains protected despite Rule 606(b)'s removal of one means of ensuring that jurors are unbiased. Even if jurors lie in *voir dire* in a way that conceals bias, juror impartiality is adequately assured by the parties' ability to bring to the court's attention any evidence of bias before the verdict is rendered, and to employ nonjuror evidence even after the verdict is rendered.

<u>Id.</u> at 529 (2014) (omitting a footnote noting an "extreme" case of juror bias may abridge a jury trial so as to raise an issue "whether the usual safeguards are or are not sufficient to protect the integrity of the process," but "those facts are not presented here"). More recently, the Supreme Court held:

> where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee.

<u>Pena-Rodriquez v. Colorado</u>, 137 S. Ct. 855, 869 (2017). The Court need not further address the application of these Supreme Court decisions to Petitioner's alleged juror misconduct challenge because the Supreme Court issued these opinions after the Missouri Court of Appeals issued its 2011 decision in Petitioner's direct appeal.

(B)  Ineffective Assistance of Trial Attorney

For his last two grounds for relief, Petitioner argues his trial attorney provided ineffective assistance of counsel by failing:  (1) to interview and call as witnesses Victim's two younger siblings (ground five) and (2) to introduce evidence Victim had made prior false allegations against two other people similar to the allegations she made against Petitioner (ground six).  As to the former, Petitioner contends he "informed his trial counsel that [Victim's younger siblings] would testify that [Victim] asked them to lie to corroborate her story."[132]  With regard to the latter, Petitioner alleged a Missouri DFS caseworker "found those accusations to be unfounded," and his trial attorney "was aware of the prior allegations and the identity of the persons against whom the prior false allegations had been made, but did not call them as witnesses."[133]  Respondents counter the Missouri Court of Appeals' decision in Petitioner's post-conviction appeal denying these claims is consistent with and not an unreasonable application of Strickland, supra.

1.  Legal Standard

The Sixth Amendment's guarantee of counsel is one of the rights applicable to the States through the Fourteenth Amendment because it is deemed fundamental and essential to a fair trial.  See Gideon v. Wainwright, 372 U.S. 336, 342 (1963).  "[T]he right to counsel is the right to the effective assistance of counsel."  McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970); accord Kimmelman v. Morrison, 477 U.S. 365, 377 (1986).  "[W]hen reviewing an ineffective-assistance-of-counsel claim, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  Woods v. Donald, 135 S. Ct.

---

[132]  Pet'r Pet'n [ECF No. 1 at 23].

[133]  Pet'r Pet'n [ECF No. 1 at 24].

1372, 1375 (2015) (per curiam) (quoting Strickland, 466 U.S. at 689). To succeed on an ineffective assistance of counsel claim, a federal habeas petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness" ("performance prong") and (2) "the deficient performance prejudiced the defense" ("prejudice prong"). Strickland, 466 U.S. at 687, 688.

To satisfy the performance prong, a petitioner must demonstrate that "counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney." Armstrong v. Kemna, 534 F.3d 857, 863 (8th Cir. 2008) (citing Strickland, 466 U.S. at 687-94). In assessing a challenge to an attorney's performance, a federal habeas court must not second-guess counsel's assistance, avoid the "distorting effects of hindsight," and attempt to evaluate counsel's challenged conduct from counsel's perspective at the time the challenged conduct occurred. Bell v. Cone, 535 U.S. 685, 698 (2002) (quoting Strickland, 466 U.S. at 689). "Although hindsight may make a decision appear unwise or unsound, when scrutinizing counsel's performance a court 'must be highly deferential.'" Underdahl v. Carlson, 381 F.3d 740, 743 (8th Cir. 2004) (quoting Strickland, 466 U.S. at 689).

There is "a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy." Garrett v. Dormire, 237 F.3d 946, 949-50 (8th Cir. 2001) (citing Strickland, 466 U.S. at 691). Strategic decisions left to counsel include trial decisions other than the decision whether or not to plead guilty, waive a jury trial, testify on one's own behalf, and take an appeal, which decisions must be made by the defendant. United States v. Washington, 198 F.3d 721, 723-24 (8th Cir. 1999); see also Jones v. Barnes, 463 U.S. 745, 751 (1983) (recognizing "the accused has the ultimate authority to make certain

fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal").  Importantly, "[t]here is a strong presumption that counsel's strategic choices were reasonable."  Forsyth v. Ault, 537 F.3d 887, 891 (8th Cir. 2008).

The prejudice prong of an ineffective assistance of counsel claim "requires a showing that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  White v. Dingle, 757 F.3d 750, 753 (8th Cir. 2014) (quoting Strickland, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Carroll v. Schriro, 243 F.3d 1097, 1100 (8th Cir. 2001) (internal quotation marks omitted) (quoting Strickland, 466 U.S. at 694).  The petitioner bears the burden of showing such a reasonable probability.  Lawrence v. Armontrout, 961 F.2d 113, 115 (8th Cir. 1992); and, in determining whether there is prejudice, the federal habeas court considers the totality of the evidence.  Armstrong v. Kemna, 590 F.3d 592, 596 (8th Cir. 2010) (citing Kimmelman, 477 U.S. at 381) ("Armstrong").

A habeas court need not address the prejudice prong if the attorney's performance was not deficient.  See Parkus v. Bowersox, 157 F.3d 1136, 1140 (8th Cir. 1998).  Likewise, a habeas court need not address counsel's allegedly deficient performance if the petitioner has failed to show prejudice.  See Strickland, 466 U.S. at 697; Williams v. Locke, 403 F.3d 1022, 1025 (8th Cir. 2005).

Importantly, the question "under § 2254(d) is not whether [the federal habeas court] believe[s] the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable – a substantially higher threshold."  Kennedy v. Kemna, 666 F.3d 472, 477 (8th Cir. 2012) (internal quotation marks omitted) (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)).  "Establishing that a state court's application of

Strickland was unreasonable under § 2254(d) is . . . difficult." Harrington, 562 U.S. at 105. "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (internal citations omitted). More specifically, when resolving an ineffective assistance of trial counsel claim, a federal habeas court views the claim through two filters: first the court defers to the judgments of trial counsel under Strickland, 466 U.S. at 689, and then the court "defer[s] to the state courts' application of federal law to the facts of the case, see Bell, 535 U.S. [at] 698-99 . . . ." Marcrum v. Luebbers, 509 F.3d 489, 501 (8th Cir. 2007). Additionally, a petitioner's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977) (addressing statements made by a petitioner during a change of plea hearing).

      2. Trial attorney's failure to investigate and call witnesses – Grounds five and six

Petitioner argues his trial attorney provided ineffective assistance of counsel by failing to investigate and call Victim's younger siblings, as well as two unidentified individuals against whom Victim had allegedly made false accusations similar to the accusations Victim made against Petitioner. Based on the available record, the Court considers the merits of these grounds as alleging Petitioner's attorney provided ineffective assistance of counsel in failing to interview and call as witnesses at trial Victim's younger brother and a sister (ground five) and Mr. Henke and a caseworker who reportedly investigated allegations Victim made against Mr. Henke (ground six).[134] Respondents contend the Missouri Court of Appeals' denial of these points

---

[134] A review of the record demonstrates that Victim may have accused Mr. Henke and Bobby of conduct similar to that of Petitioner. See, e.g., counsel's pretrial discussion of State's motion in limine, Trial Tr., Vol. I, Resp't Ex. 9, at 4-7, and trial testimony of Gena Morice regarding accusation against Bobby, Trial Tr., Vol. II, Resp't Ex. 9, at 449-64. Those are the two individuals the Court considers as the subject of Petitioner's ground six. Petitioner, however, procedurally defaulted this ineffective assistance of counsel claim to the extent it focuses on any allegations Victim made against Bobby by not raising the claim in his postconviction appeal.

during Petitioner's post-conviction appeal is neither contrary to nor an unreasonable application of Strickland and is entitled to deference.

In Petitioner's post-conviction appeal, the Missouri Court of Appeals concluded with regard to each of these ineffective assistance of trial counsel claims that there was no error due to Petitioner's statements at sentencing that "there were no witnesses that he wanted trial counsel to call to testify at trial that she did not contact or call[;] . . . there was not anything he asked trial counsel to do that she refused to do[;] . . . there was nothing he requested that she not do that she did anyway[; and] he was satisfied with his trial counsel's services."[135]   Additionally, the Missouri Court of Appeals pointed out Petitioner's counsel did present Petitioner's brother as a witness at trial, and the attorney's "decision not to call someone from DFS was reasonable strategy because there was no showing that [Victim]'s allegation against [Petitioner's brother] w[as] unsubstantiated and there was evidence indicating the allegations were valid in that [Victim] was removed from [Petitioner's brother's] home."[136]

---

During trial, Petitioner presented Bobby's mother, Gena Morice, as a witness.  She testified that she questioned Victim about Victim's accusations against Bobby, Victim told Ms. Morice that Victim had not told the truth about those accusations, and no further reporting of, inquiry about, or findings regarding the accusations occurred.  Petitioner presented Mr. Henke as a witness during trial and did not question him about any allegation Victim made against him.  See, e.g., Trial Tr., Resp'ts Ex. 9, at 436-45.  In his amended PCR motion, Petitioner limited this ineffective assistance of counsel claim to his trial attorney's failure to introduce evidence that Victim "made similar false accusations against [Mr.] Henke[ and] to present evidence that the accusations were false." Pet'r Am. PCR Mot., PCR Legal File, Resp'ts Ex. 1, at 20, 22.   In his PCR appeal, Petitioner again limited this ineffective assistance of counsel claim to his trial attorney's failure to call the DFS caseworker and Mr. Henke. Point II, Pet'r Br., Resp'ts Ex. 2 at 12.

By not presenting his ineffective assistance of trial counsel claim based on allegations Victim made against Bobby, Petitioner did not give the Missouri Court of Appeals "a full opportunity" to resolve the constitutional issue presented by such a claim.  See O'Sullivan, 526 U.S. at 845.  Petitioner has failed to assert or establish either cause and prejudice or a miscarriage of justice to avoid the procedural default of the claim.  Therefore, the Court need not address the merits of Petitioner's procedurally barred ineffective assistance of trial counsel claim focused on any allegation Victim made against Bobby.

[135] Cooper, ED98341, Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), at 5 and 6.

[136] Cooper, ED98341, Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), at 6.

In resolving these grounds, the Court must "afford 'both the state court and the defense attorney the benefit of the doubt'" due to the AEDPA's doubly deferential standard of review and the strong presumption that the attorney "'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (quoting Burt v. Titlow, 134 S. Ct. 10, 13, 17 (2013)).

"Decisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" Hanes v. Dormire, 240 F.3d 694, 698 (8th Cir. 2001) (quoting Williams v. Armontrout, 912 F.2d 924, 934 (8th Cir. 1990) (en banc)). Even when a main strategy is to attack the credibility of another, an attorney's "failure to consult with or call . . . witnesses" may fall within the "wide bounds of strategic choices that counsel is afforded." Id. at 698-99. Furthermore, the absence of a strategic justification for an attorney's inaction does not support a determination that the attorney's inaction "is necessarily unreasonable." Forrest v. Steele, 764 F.3d 848, 859 (8th Cir. 2014). A petitioner has the "burden to show that the course defense counsel took is not among the 'countless ways to provide effective assistance,'" in light of "the 'strong presumption' of reasonableness permeating defense counsel's every decision." Id. (citing Strickland, 466 U.S. at 689).

For purposes of this discussion, Petitioner's trial attorney's defense strategy was "to show [Victim] lied [about] Bobby, her dad, the uncle that got her out of foster care and took her in."[137] In her opening, Petitioner's trial attorney referred to Victim's allegations that Bobby "touched her" and, through the dvd played for the jury, had "intercourse with her almost every day when she was 9-year[s] old" and that Victim later told Bobby's mother, Ms. Morice, that the

---

[137] Trial Tr., Vol. II, Resp'ts Ex. 9, at 286-88.

allegations were not true and Victim admitted making the allegations "because Bobby doesn't pay any attention to me."[138]  As the Court summarized earlier, the trial court reveals Petitioner's trial attorney introduced evidence that Victim recanted her allegations against Bobby, through Ms. Morice's testimony.

Additionally, Petitioner's trial attorney introduced evidence raising questions about the veracity of Victim's allegations against Petitioner, through Ms. Henke's testimony.  Ms. Henke testified that a few weeks after Petitioner's arrest, first, Victim, then her younger brother and sister were placed with the Henkes as foster parents.[139]  While the Henkes were not able to discuss the case with Victim and her younger siblings, Victim at one point shortly after her placement with the Henkes, asked Ms. Henke, "why [Petitioner] was still in jail if he didn't do anything."[140]  When Ms. Henke responded, "What do you mean, he didn't do anything," Victim, Ms. Henke testified, "just smiled" and Ms. Henke replied "if you've lied you need to let us know so we can get him out."[141]  Ms. Henke further testified that later she "looked at [Victim] and said:  Did he touch you the way that you said he did and she said: Yes," and Ms. Henke "let it go."[142]  Ms. Henke also testified that within approximately three months of Victim's placement in their home, Victim was placed in a different foster home.[143]

(a)  Trial counsel's consideration of Victim's younger siblings

---

[138]  Trial Tr., Resp'ts Ex. 9, at 409-11.

[139]  Trial Tr., Resp'ts Ex. 9, at 423-26.

[140]  Trial Tr., Resp'ts Ex. 9, at 426-27.

[141]  Trial Tr., Resp'ts Ex. 9, at 427.

[142]  Trial Tr., Resp'ts Ex. 9, at 427.

[143]  Trial Tr., Resp'ts Ex. 9, at 428.

With regard to the claim based on Victim's younger siblings, the "491 hearing" transcript reveals Petitioner's trial attorney was aware prior to trial that Victim's younger brother and sister had knowledge of Petitioner's conduct with Victim in the bed. During the second day of the "491 hearing," Petitioner's trial attorney cross-examined Megan Yanez, an investigator for the Children's Division in St. Louis County, about Victim's statement during their October 2008 conversation at Victim's school "that [Victim's younger] brother and sister had proof" regarding Victim's allegations against Petitioner.[144] Also during the "491 hearing," Petitioner's trial attorney cross-examined Detective Bruno who testified Victim said "her brother and sister would sometimes be awake when this happened and they could confirm that something was going on in the bed."[145] At trial, Detective Bruno further testified that, in her report, she stated Victim's younger brother and sister described hearing Petitioner's zipper and then Petitioner asking Victim if "that fe[lt] good" and Victim responding "no" and then saying "ouch" while all of them were in bed during the reported incidents.[146] Additionally, during trial Victim testified her younger brother and sister told Victim they were "pretending to be asleep" during incidents in the bed.[147] Victim's younger siblings did not testify at trial.

Petitioner's trial attorney attempted to provide testimony regarding Victim's younger siblings' recanting of their statements about Petitioner's conduct toward Victim in bed. Petitioner's trial attorney told the trial court and prosecutor she was advised by Mr. and Ms. Henke, who were then foster parents for Victim's younger siblings, that "the kids had recanted to

---

[144] Trial Tr., Vol. II, Resp't's Ex. 9, at 59-60.

[145] Trial Tr., Vol. II, Resp't's Ex. 9, at 72.

[146] Trial Tr. Vol. II, Resp't's Ex. 9, at 364-65.

[147] Trial Tr., Vol. II, Resp't's Ex. 9, at 163.

Jill" Perens, "the current social worker," who Petitioner's attorney planned to call as a witness.[148]  Petitioner's attorney further explained that Ms. Perens told the attorney that Mr. Henke had called her and said "you need to come out here and talk to the kids, because they told us [Victim] put them up to it."[149]  Petitioner's trial attorney explained that Ms. Perens advised her that "the kids didn't recant to [Ms. Perens]."[150]  Petitioner's trial attorney then explained to the Henkes, and reported to the trial court, that she was not going to call Ms. Perens as a witness because the Henkes told Ms. Perens "the kids had recanted[ but the kids] never actually recanted to [Ms. Perens]."[151]

(b)  Trial counsel's consideration of Mr. Henke and a DFS caseworker

During a conference prior to *voir dire* the first day of trial where the parties and trial court addressed the State's motion in limine, counsel for both parties briefly disputed whether Victim made "false allegations against others."[152]  In particular, Petitioner's counsel mentioned that Victim accused Petitioner's brother, Mr. Henke, "but it was unsubstantiated, as to touching."[153]  When the prosecutor mentioned Victim's allegations against Petitioner had been "substantiated," Petitioner's counsel responded that Victim's "claim against [Mr. Henke]" was not substantiated.[154]  The trial court ruled the "findings of the Division of Family Services" are

---

[148]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 277, 398-99.

[149]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 398-99.

[150]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 398.

[151]  Trial Tr., Vol. II, Resp'ts Ex. 9, at 399.

[152]  Trial Tr., Vol. I, Resp'ts Ex. 9, at 4-7; State's General Mot. in Limine, Legal File, Resp'ts Ex. 5, at 28-32.

[153]  Trial Tr., Vol. I, Resp'ts Ex. 9, at 4-5.

[154]  Trial Tr., Vol. I, Resp'ts Ex. 9, at 6.

not admissible but advised the court would "certainly consider" any evidence in the form of an offer of proof outside the presence of the jury that Petitioner's counsel wanted to present regarding any unsubstantiated claims made by Victim.[155]

Throughout trial Petitioner's trial attorney repeatedly mentioned she planned to inquire about allegations Victim made against other people.[156] The trial court stated Petitioner's trial attorney needed to make "an offer of proof about these other allegations. I'm not going to allow that in the presence of the jury."[157] Petitioner's trial attorney provided an offer of proof by questioning Victim outside the presence of the jury.[158] During that offer, Victim explained she understood why she was no longer under the foster care of Rhonda and Roy Henke, because she told a counselor, who came to the house to speak with her and her younger sister, that Mr. Henke had done "the same thing [her] dad did" and she told Ms. Henke that Mr. Henke had "tried to touch [her] breasts."[159] After she reported that conduct, Mr. Henke left the house for approximately three weeks and then Victim was moved to a different foster placement and Mr. Henke returned home.[160] Victim also described during the offer that Ms. Morice's son, Bobby, "tried to touch [her] . . . private spot."[161] Victim further testified during the offer that at some point when she was in Mr. and Ms. Henke's foster care, she told them she was "hurt because

---

[155] Trial Tr., Vol. I, Resp'ts Ex. 9, at 7.

[156] See, e.g., Trial Tr., Vol. II, Resp'ts Ex. 9, at 123.

[157] See, e.g., Trial Tr., Vol. II, Resp'ts Ex. 9, at 124.

[158] Trial Tr., Vol. II, Resp'ts Ex. 9, at 141-59.

[159] Trial Tr., Vol. II, Resp'ts Ex. 9, at 142-44, 155.

[160] Trial Tr., Vol. II, Resp'ts Ex. 9, at 147-48.

[161] Trial Tr., Vol. II, Resp'ts Ex. 9, at 145-51, 155.

[Mr. Henke] didn't give [her] the same attention that he did [Victim's younger brother and sister]."[162]

After the offer, Petitioner's trial attorney advised that she had endorsed Bobby and Mr. Henke as witnesses to testify about "these allegations . . . made against them."[163] The prosecutor objected on the ground these were not false allegations, which are the only admissible type of sexual conduct allegations, Victim had not recanted, and there was no adjudication by a Family Court or anyone that any of the allegations were false.[164] Petitioner's trial attorney countered that she could not "bring in anybody from the State" who investigated the claim "to say [Victim's allegations against Mr. Henke] were unsubstantiated" and she was not claiming Victim's conduct was sexual.[165] Rather, Petitioner's trial attorney argued, Petitioner was "simply saying as part of the defense that [Victim] has made up these allegations because she craves attention."[166] The trial court ruled the allegations were admissible if they are false and the falsity "needs to have been decided by the person making the statement, recanting it," rather than through the trial court's decision about the credibility of Victim or of the alleged perpetrators with regard to the alleged conduct.[167] The trial court refused this offer of proof, did not foreclose Petitioner's trial attorney from making other offers of proof, and prohibited Petitioner's trial

---

[162] Trial Tr., Vol. II, Resp'ts Ex. 9, at 144.

[163] Trial Tr., Vol. II, Resp'ts Ex. 9, at 155.

[164] Trial Tr., Vol. II, Resp'ts Ex. 9, at 156.

[165] Trial Tr., Vol. II, Resp'ts Ex. 9, at 156-57.

[166] Trial Tr., Vol. II, Resp'ts Ex. 9, at 157.

[167] Trial Tr., Vol. II, Resp'ts Ex. 9, at 157.

attorney from asking Victim or anyone "in the presence of the jury if [Victim] made these allegations against Bobby or [Mr. Henke] or anyone else."[168]

The attorney later advised the trial court she understood Victim had recanted to Mr. Henke and that was why she was going to ask Mr. Henke about the allegations. In particular, before presenting Mr. Henke as a witness, the trial court stated Petitioner's trial attorney was "not going to ask questions trying to elicit hearsay . . . [and was] not going to be allowed to ask a witness what some other person told them."[169] When Petitioner's attorney queried, "You're saying [Mr. Henke] can't say [Victim] recanted," the trial court responded, "Not unless [Victim] said that to [Mr. Henke]."[170] Petitioner's trial attorney replied, "She did."[171] Mr. Henke testified about his care of Victim and her younger siblings before her accusations against Petitioner and when she was placed in the Henkes' care after Petitioner was arrested.[172] Mr. Henke did not, however, testify about, and was not asked about, any accusations made against him by Victim.[173]

(c) Petitioner's argument – Trial attorney's deficient performance

In support of his argument that his trial attorney provided deficient performance in failing to call Victim's younger siblings and a DFS caseworker at trial or asking Mr. Henke about Victim's allegations against him, Petitioner cites Grooms v. Solem, 923 F.2d 88, 90 (8th Cir. 1991); Chambers v. Armontrout, 885 F.2d 1318, 1322 (8th Cir. 1989); Wade v. Armontrout, 798

---

[168] Trial Tr., Vol. II, Resp'ts Ex. 9, at 159.

[169] Trial Tr., Vol. II, Resp'ts Ex. 9, at 399.

[170] Trial Tr., Vol. II, Resp'ts Ex. 9, at 399.

[171] Trial Tr., Vol. II, Resp'ts Ex. 9, at 399.

[172] Trial Tr., Resp'ts Ex. 9, at 436-46.

[173] Trial Tr., Resp'ts Ex. 9, at 436-46.

F.2d 304 (8th Cir. 1986); and <u>Thomas v. Lockhart</u>, 738 F.2d 304 (8th Cir. 1984). These cases are distinguishable.

In <u>Grooms</u>, the Eighth Circuit decided an attorney who failed to make any effort to investigate documents regarding a possible alibi or to seek a continuance to permit an investigation into the information in the documents provided ineffective assistance. <u>Grooms</u>, <u>supra</u>. The Eighth Circuit vacated the panel decision in <u>Chambers</u> cited by Petitioner. <u>Chambers v. Armontrout</u>, 907 F.2d 825 (8th Cir. 1990) (en banc). In the *en banc* decision in <u>Chambers</u>, the Eighth Circuit concluded the trial attorney's failure to interview, call at trial, and call at sentencing the only eyewitness who would establish a defense of self-defense in a capital murder case constituted the ineffective assistance of counsel. <u>Id.</u> In <u>Wade</u>, the Eighth Circuit found a trial attorney's failure to engage in the discovery process and investigate alibi witnesses, except to the extent the attorney conversed with the petitioner one time, constituted deficient performance. <u>Wade</u>, 798 F.2d at 307. In <u>Thomas</u>, the Eighth Circuit found a trial attorney's review of only "the investigative file of the prosecuting attorney" constituted deficient performance in light of the fact the attorney received, prior to the petitioner's guilty plea, information regarding potential alibi witnesses and the mental history of the petitioner. <u>Thomas</u>, 738 F.2d at 308-10.

In Petitioner's case, there is no showing that Petitioner's trial attorney failed to consider information provided by Victim's younger siblings. To the contrary, Petitioner's attorney was familiar with both the Victim's younger siblings' statements as shown by her participation in the pre-trial "491 hearing," and the need to establish they were recanted in order to assist Petitioner's defense. The record also demonstrates Petitioner's trial attorney was aware that the lack of substantiation or recanting of Victim's allegations against Mr. Henke would assist in Petitioner's

defense. The trial attorney did not, however, have admissible evidence of such recanting to introduce. The fact the attorney was unable to demonstrate through admissible evidence either the recanting of Victim's younger siblings' statements supportive of Victim's allegations or the lack of substantiation or recanting of Victim's allegations against Mr. Henke does not reflect deficient performance by the trial attorney under the circumstances.

Finding no basis for concluding Petitioner's trial attorney engaged in deficient performance with respect to either of Petitioner's ineffective assistance of counsel claims, the Court need not address the prejudice element under Strickland. The Missouri Court of Appeals' decision upholding the denial of Petitioner's ineffective assistance of trial counsel claims focused on Victim's younger siblings, Mr. Henke, and a DFS caseworker was a reasonable application of Strickland and does not support the granting of habeas relief in favor of Petitioner. Grounds five and six are denied.

### IV. Certificate of Appealability

To grant a certificate of appealability, a petitioner must make a substantial showing of the denial of a federal constitutional right. See Slack v. McDaniel, 529 U.S. 473, 483-84 (2000); 28 U.S.C. § 2253(c)(2). A substantial showing is a showing that "jurists of reason could disagree with the district court's resolution of [the petitioner's] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). Because Petitioner has not made such a showing, the Court will not issue a certificate of appealability.

### VII. Conclusion

After careful consideration,

**IT IS HEREBY ORDERED** that Troy Steele and Josh Hawley are **SUBSTITUTED** as Respondents in this proceeding.

**IT IS FURTHER ORDERED** that Petitioner's Petition for Writ of Habeas Corpus [ECF No. 1] is **DENIED**.

**IT IS FINALLY ORDERED** that the Court will not issue a certificate of appealability.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

PATRICIA                      L.                      COHEN
UNITED       STATES       MAGISTRATE       JUDGE

Dated this 17th day of May, 2017.